**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x

**HUGO GOMEZ and ADAM GABIAM** on :   **INDEX NO: 10-CV-3503 (JSR)**
behalf of themselves and all others :
similarly situated, :
                                   :
            **Plaintiffs,** :
                                     :
      **v.** :
                                       :
**BRILL SECURITIES, INC., ROBERT** :
**BROWN, NICHOLAS BROWN,** :
**JONATHAN KURTIN,  and DAVID** :
**NUTKIS** :
                                     :
        **Defendants.** :
                                     :

-------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS'**
**MOTION TO DISMISS OR ALTERNATIVELY, COMPELLING ARBITRATION**
<u>**BEFORE FINRA THEIR FLSA CLAIM AND TO DISMISS OR STAY**</u>
<u>**PLAINTIFFS' STATE LAW CLAIMS**</u>

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................................ i

**I.   PRELIMINARY STATEMENT** ..............................................Error! Bookmark not defined.

**II.   ARGUMENT** ...................................................................................... **4**

**A.   PLAINTIFFS' CLASS AND COLLECTIVE ACTION CLAIMS ARE NOT SUBJECT TO ARBITRATION, THUS DEFENDANTS MOTION TO DISMISS SHOULD BE DENIED** .................................................................................. **4**

**1.   As Consistently Recognized by FINRA, Rule 13204 Applies to FLSA Collective Actions** ................................................................. **7**

**a.   FINRA History** ...................................................................... **7**

**b.   FINRA Has Consistently Interpreted Rule 13204 As Precluding Collective Actions From Arbitration** ............................................ **8**

**c.   FINRA's Consistent Interpretation Of Rule 13204  Is Eminently Reasonable Given The Purpose of the Rule** ...................................... **11**

**d.   FINRA Interpretation Of Its Rule 13204 Should Be Given Deference** ............ **14**

**1) Under *Auer v. Robbins*, Controlling Deference Should Be Given To FINRA's Interpretation Of Their Own Rules** ................................. **14**

**2) Even if *Auer* is Found To Be Inapplicable, FINRA's Interpretation Should Still Be Found Persuasive** ..................................................... **17**

**e.   Defendants Have Failed To Present Any Reason For Not Regarding FINRA's Interpretation of Rule 13204 With The Deference It Deserves** ..................... **18**

**1) Defendants' Attacks On FINRA's 1999 Opinion Letter Are Unavailing** ......... **18**

**2) FINRA's Inclusion Of A Joinder Rule Does Not Preclude Collective Actions From Rule 13204** .................................................................. **18**

**3) Defendants' Cases Are Unpersuasive** ............................................... **19**

**2.   Plaintiffs' FLSA Overtime Claims Are Not Eligible For Arbitration Because They Are "The Subject of" Plaintiffs' State Law Class Action** ......................... **22**

**III.   CONCLUSION** ...................................................................... **25**

## **TABLE OF AUTHORITIES**

### **CASES:**

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002) ........................................................ 20

*Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484 (S.D.N.Y. 2009) ........................ 12

*Amalgamated Clothing & Textile Workers Union v. SEC*, 15 F.3d 254 (2d Cir. 1994) .......... 15

*Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997) ............................ 14, 15

*Bailey v. Ameriquest Mortg. Co.*, 346 F.3d 821 (8th Cir. 2003) .................................................. 20

*Barfield v. New York City Health & Hosps. Corp.***,** 05 Civ. 6319 (JSR), 2006 U.S. Dist.
    LEXIS 56711 (S.D.N.Y. Aug. 11, 2006), *aff'd,* 537 F.3d 132 (2d Cir. 2008) ........................ 14

*Barron v. Holder*, 309 Fed. Appx. 466 (2d Cir. Feb. 11, 2009) .................................................... 1

*Bernhard v. TD Bank, N.A.*, Civil No. 08-4392 (RBK/AMD), 2009 U.S. Dist. LEXIS
    92308 (D.N.J. Oct. 5, 2009) ...................................................................................................... 6

*Bolamos v. Globe Airport Sec. Servs.*, Case Number: 02-21005-CIV-MORENO, *2002
    U.S. Dist. LEXIS 11056* (S.D. Fla. May 20, 2002), *aff'd,* 64 Fed. Appx. 743 (11th Cir.
    2003) ........................................................................................................................................ 20

*Braunstein v. E. Photographic Labs.,* 600 F.2d 335 (2d Cir. 1975), *cert. denied,* 441 U.S.
    944 (1979) ................................................................................................................................ 12

*Castellano v. Prudential-Bache Sec., Inc.,* No. 90 Civ. 1287, 1990 U.S. Dist. LEXIS 7352
    (S.D.N.Y. June 19, 1990) ......................................................................................................... 16

*Carter v. Countrywide Credit Indus.*, 362 F.3d 294 (5th Cir. 2004) .................................... 14, 20

*Chapman v. Lehman Bros.,* 279 F. Supp. 2d 1286 (S.D. Fla. 2003) ....................................... 6, 21

*Clark v. First Union Sec.*, 64 Cal. Rptr. 3d 313 (Cal. Ct. App. 2007) ........................................ 18

*Christensen v. Harris County,* 529 U.S. 576 (2000) .................................................................... 15

*Coheleach v. Bear, Stearns & Co.*, 440 F. Supp. 2d 338 (S.D.N.Y. 2006) ........................ 1, 6, 11

*Cook v. United States,* 109 F.R.D. 81 (E.D.N.Y.1985) ............................................................... 13

*Cooper v. Miller Johnson Steichen Kinnard, Inc.*, Civil No. 02-1236 RHK/AJB, 2002 U.S. Dist. LEXIS 27764 (D. Minn. Nov. 6, 2002) .................................................. 24

*Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 207 (2d Cir. 2009)* ...................... 15, 16, 20

*Couer Alaska Inc. v. Southeast Alaska Conservation Council*, 129 S. Ct. 2458 (2009) ............. 15

*Dumitrescu v. Mr. Chow Enters.*, 07 Civ. 3601 (PKL), 2008 U.S. Dist. LEXIS 49881 (S.D.N.Y. June 30, 2008) ............................................................................ 13

*Encarnacion ex rel. George v. Astrue*, 568 F.3d 72 (2d Cir. N.Y. 2009) .................................... 17

*F.N. Wolf & Co. v. Bowles*, 610 N.Y.S.2d 757, 760 (N.Y. Sup. Ct. 1994) ................................ 16

*Fogel v. Chestnutt,* 533 F.2d 731(2d Cir. 1975) ........................................................ 16

*Foster v. Food Emporium*, 99 Civ. 3860 (CM), 2000 U.S. Dist. LEXIS 6053 (S.D.N.Y. Apr. 26, 2000) .................................................................................... 13

*French v. First Union Sec.*, 209 F. Supp. 2d 818 (M.D. Tenn. 2002) ........................................ 9

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) ........................................... 20

*Giordano v. Pep Boys--Manny, Moe & Jack, Inc.*, Civ. No. 99-1281, 2001 U.S. Dist. LEXIS 5433 (E.D. Pa. Mar. 29, 2001) ............................................................... 20

*Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, *2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007)* ........................................................................................... 6

*Good v. Ameriprise Fin., Inc.,* Civil No. 06-1027 (PJS/RLE), 2007 U.S. Dist. LEXIS 9298 (D. Minn. Feb. 8, 2007) ........................................................................ 6

*Grayson v. K Mart Corp.*, 79 F.3d 1086 (11th Cir. 1996) ..................................................... 19

*Granite Rock Co. v. International Bhd. of Teamsters*, No. 08-1214, 2010 U.S. LEXIS 5255 (June 24, 2010) ..................................................................................... 4

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) ........................................... 12, 13, 14

*Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997) ................................................ 11

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.,* Master File: 06-3202**,** 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009) ................................................. 6

*In re Novartis Wage & Hour Litig.*, No. 09-0437-cv, 2010 U.S. App. LEXIS 13708 (2d Cir. July 6, 2010) ................................................................................... 15

*Jacobsen v. The Stop & Shop Supermarket*, 02 CIV. 5915 (DLC), 2003 U.S. Dist. LEXIS 7988  (S.D.N.Y. May 14, 2003) ...................................................................... 14

*Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623 (E.D. Cal. 2009) ................................ 19

*Kuehner v. Dickinson & Co.*, 84 F.3d 316 (9th Cir. 1996) ........................................... 20

*Kozma v. Hunter Scott Fin., LLC*, Case No. 09-80502, 2010 U.S. Dist. Lexis 16746 (S.D. Fla. Feb. 25, 2010) ...................................................................................... 21

*Linares Huarcaya v. Mukasey,* 550 F.3d 224 (2d Cir. 2008) ................................ 15, 16

*Lomas v. Travelers Prop. Cas. Corp.* (*In re Citigroup, Inc.*), 376 F.3d 23 (1st Cir. 2004) .......... 4

*Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007) ......................................... 3, 15, 20

*Lopez v. Terrell*, 09 Civ. 8148 (RJH), 2010 U.S. Dist. LEXIS 28900 (S.D.N.Y. Mar. 26, 2010) ................................................................................................ 17

*Lusardi v. Lechner*, 855 F.2d 1062 (3d Cir. 1988) ........................................... 12, 14, 19

*Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357 (S.D.N.Y. 2007) ......................... 12, 13

*McFadden v. Clarkeson Research Group,* 2010 U.S. Dist. LEXIS 50526 (E.D.N.Y. May 18, 2010) ................................................................................................ 20

*Mitra v. Global Fin. Corp.*, 09-CV-4387 (DLI) (RLM), 2010 U.S. Dist. LEXIS 37390 (E.D.N.Y. Apr. 15, 2010) ..................................................................... 24

*Montes v. Shearson Lehman Bros.*, 128 F.3d 1456 (11th Cir. 1997) ........................................... 20

*Nat'l Planning Corp. v. Achatz*, 02-CV-0196E (Sr), 2002 U.S. Dist. LEXIS 25516 (W.D.N.Y. Dec. 17, 2002) .................................................................... 16

*Nieto v. Goldman Sachs & Co.*, Case No. 04-21824, slip op. (S.D. Fla. Jan. 3, 2005) ........ *passim*

*Nielsen v. Piper, Jaffray & Hopwood, Inc.*, 66 F.3d 145 (7th Cir. 1995) ..................................... 4

*North v. Board of Trustees of Ill. State Univ.*, 676 F. Supp. 2d 690 (C.D. Ill. 2009) ............ 12, 19

*NRDC v. FAA*, 564 F.3d 549 (2d Cir. 2009) .............................................................. 17

*Olde Discount Corp. v. Hubbard*, 4 F.Supp.2d 1268 (D. Kan. 1998), *aff'd*, 172 F.3d 879 (10th Cir. 1999) .......................................................................... 23

*Paskernak v. Maxim Group LLC.,* 09 Civ. 5579 (SHS), slip op. (S.D.N.Y. Mar. 8, 2010) ...... 1, 6

*Pirrone v. North Hotel Assocs.*, 108 F.R.D. 78 (E.D. Pa. 1985) .................................................. 14

*Realite v. ARK Rests. Corp.*, 7 F. Supp. 303 (S.D.N.Y. 1998) .................................................... 14

*Reiseck v. Universal Communications of Miami, Inc.,* 591 F.3d 101 (2d Cir. 2010) ................. 23

*Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234 (N.D.N.Y 2002) ..................... 11, 14

*Scher v. Equitable Life Assurance Soc'y*, 866 F. Supp. 776 (S.D.N.Y. 1994) .............................. 6

*Scholtisek v. Eldre Corp.*, 03-CV-6656L, 2010 U.S. Dist. LEXIS 26664 (W.D.N.Y. Mar. 22, 2010) ...................................................................................................................................... 23

*Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1944) ............................ 17

*Standard Inv. Chartered, Inc. v. NASD*, 07 Civ. 2014 (JSR), 08 Civ. 11193 (JSR), 2010 U.S. Dist. LEXIS 19174 (S.D.N.Y. March 1, 2010) (Rakoff, J.) .......................................... 7, 8

*Streit v. Amdocs, Inc.*, 307 Fed. Appx. 505 (2d Cir. 2009) ........................................................ 24

*Szilassy v. Ameriprise Fin. Servs.*, Case NO. 07-80559-Civ., 2007 U.S. Dist. LEXIS 97110 (S.D. Fla. Aug. 1, 2007) ................................................................................................. 21

*Torres v. Ridgewood Bushwick Senior Citizens Homecare Council, Inc.*, 08-CV-3678 (CBA), 2009 U.S. Dist. LEXIS 33622 (E.D.N.Y. Apr. 22, 2009) ........................................... 15

*Volt Info. Sci. Inc. v. Board of Trustees,* 489 U.S. 468, 478 (1989) .............................................. 4

*Wilson v. Deutsche Bank AG***,** No. 05 C 3474, 2006 U.S. Dist. LEXIS 94847 (N.D. Ill. Mar. 20, 2006) ........................................................................................................................... 9

*Wilks v. Pep Boys*, 241 F. Supp. 2d 860 (M.D. Tenn. 2003) ...................................................... 20

*Wong v. Doar*, 571 F.3d 247 (2d Cir. 2009) ............................................................................... 17

*Woods v. New York Life Ins. Co.*, 686 F.2d 578 (7th Cir. 1982) ................................................. 11

*Zivali v. AT&T Mobility LLC,* 646 F. Supp. 2d 658 (S.D.N.Y. 2009) (Rakoff, J.) ..................... 14

**<u>STATUTES</u>**:

Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA") ............................. *passim*

*29 U.S.C § 216(b)* ............................................................................................. *passim*

29 U.S.C. § 255 ..................................................................................................... 13

29 U.S.C. § 255(a) ................................................................................................ 23

29 U.S.C. § 256(b) ................................................................................................ 13

N.Y. Labor Law § 193 ........................................................................................... 1

N.Y. Lab. Law § 663(3) ........................................................................................ 23

Exchange Act, *15 U.S.C. §§ 78a-78oo* ................................................................ 7

15 U.S.C. § 78o-3(a) .............................................................................................. 7

## RULES:

Fed. R. Civ. P. 23 ............................................................................................. *passim*

## REGULATIONS:

FINRA Dispute Resolution Rule 13204 ............................................................*Passim*

FINRA Dispute Resolution Rule 13312 ................................................................ 18

NASD Dispute Resolution Rule 10301(d) .......................................................... *passim*

Notice of Filing and Order Granting Accelerated Approval of Proposed Rule Change
    Relating to the Restated Certificate of Incorporation of National Association of
    Securities Dealers, Inc., Release No. 34-56146, 2007 SEC LEXIS 1641 (July 6, 2007) ......... 8

12 N.Y.C.R.R. § 142-2.2 ....................................................................................... 1

Order Approving Proposed Rule Change Relating to the Exclusion of Class Actions From
    Arbitration Proceedings, Exchange Act Release No. 34-31371, 57 Fed. Reg. 52659,
    52661 (Nov. 4, 1992) .......................................................................................... 8

Exchange Act Rel. No. 34-31359 (Oct. 27, 1992), 57 FR 52661 (Nov. 4, 1992) ........................ 8

Exchange Act Rel. No. 34-55158 (January 24, 2007), 72 FR 4574 (Jan. 31, 2007) ................... 9

## MISCELLANEOUS:

*SICA: The First Twenty Years,* Constantine N. Katsoris, 23 Fordham Urb. LJ. 483, 490
    (1996) .............................................................................................................. 8

Plaintiffs, Hugo Gomez and Adam Gabiam (together "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants' Memorandum Of Law In Support Of Motion To Dismiss, Or Alternatively, Compelling Plaintiffs To Arbitrate Before FINRA Their FLSA Claim And To Dismiss Or Stay Plaintiffs' State Law Claims ("Motion" or "Mot.").[1]

## I.    PRELIMINARY STATEMENT

Plaintiffs are stockbrokers who were formerly employed by Brill Securities, Inc. ("Brill") (Brill, collectively with defendants Robert Brown, Nicholas Brown, Jonathan Kurtin, and David Nutkis, "Defendants").  Plaintiffs bring this action on behalf of other similarly situated current and former Brill stockbrokers for unpaid overtime compensation in willful violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and 12 N.Y.C.R.R. § 142-2.2 and for impermissible wage deductions pursuant to N.Y. Labor Law § 193.  Plaintiffs are

---

[1]    To assist the Court, Plaintiffs are submitting herewith the declaration of Matthew Kadushin, dated July 27, 2010 ("Kadushin Dec."), attaching as Exhibit A, a letter from Jean I. Feeney, then NASD Assistant General Counsel, addressed to Cliff Palefsky, Esq. of the National Employment Lawyers Association, dated  September 21, 1999; attaching as Exhibit B, the Affidavit of George Friedman, then NASD Director of Arbitration, dated December 22, 2004, submitted in connection with *Nieto v. Goldman Sachs & Co.*, Case No. 04-21824, slip op. (S.D. Fla. Jan. 3, 2005); attached as Exhibit C, the Affidavit of James Flynn, then CBOE Director  of Arbitration, dated December 28, 2004, submitted in connection with the *Nieto* case; attached as Exhibit D, the Declaration of Karen Kupersmith, then NYSE Director of Arbitration, dated December 23, 2004, submitted in connection with the *Nieto* case; attached as Exhibit E, a letter from Jean I. Feeney, then NASD Vice-President, Chief Counsel, Dispute Resolution, addressed to the plaintiffs' counsel in the case of *Coheleach v. Bear, Stearns & Co.*, 05 Civ. 8851 (MGC) in the Southern District of New York, dated March 20, 2006; attached as Exhibit F, a letter from Kenneth L. Andrichik, FINRA Senior Vice President-Chief Counsel and Director of Mediation and Strategy, addressed to Charles Joseph, Esq., of Joseph, Herzfeld, Hester & Kirschenbaum LLP, dated July 16, 2010; attached as Exhibit G, is the Order Granting Preliminary Approval of Class Action Settlement in *Paskernak v. Maxim Group LLC.,* 09 Civ. 5579 (SHS), in the Southern District of New York, dated November 16, 2009; attached as Exhibit H is FINRA Dispute Resolution Rule 13204; attached as Exhibit I is the Order Approving Proposed Rule Change Relating to the Exclusion of Class Actions From Arbitration Proceedings, Exchange Act Release No. 34-31371; File No. SR-NASD-92-28 (Oct. 28, 1992), 57 FR 52659 (Nov. 4, 1992).

bringing their FLSA claims as a collective action and their state law claims as a Rule 23 opt-out class action.

Plaintiffs' FLSA and state law claims for overtime are lodged against the same Defendants, based on the same set of facts, and New York courts look to the FLSA to evaluate state overtime claims.   Indeed, Defendants acknowledge that the FLSA claim is "virtually identical" to Plaintiffs' state law overtime claim.   (Mot. at 1)   Nevertheless, Defendants have moved to compel arbitration of Plaintiffs' FLSA collective action claim, while simultaneously conceding that their "virtually identical" state law class action claim is barred from FINRA arbitration.   In addition to the obvious incongruity of those positions, Defendants' argument ignores the fact that FINRA has expressly stated on multiple occasions -- including in a letter written in connection with this particular case -- that the rule barring arbitration of class actions also bars FLSA collective actions.

The dual purpose of the rule barring class action claims from arbitration is 1) limiting "wasteful, duplicative litigation" by permitting litigants to pursue their claims as a group and 2) recognizing that these group actions are better handled by courts which have procedures in place or dealing with them.   FINRA's interpretation recognizes that preventing companies from forcing collective action members to individually arbitrate their claims rather than pursuing them as a group in a judicial forum with procedures in place for handling that type of action serves this same dual purpose.

In attempting to persuade the Court to ignore more than a decade's worth of FINRA opinions about its own rule, Defendants cite the wrong standard of deference and rely heavily on four cases from the Southern District of Florida.   Under the proper standard of deference,

afforded to an agency's interpretation of its own rules and regulations, FINRA's interpretation is "controlling."  *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 171 (2007).

In stark contrast to FINRA's reasonable and "controlling" interpretation of its rule, Defendants' reading ignores the rule's underlying purpose and turns the rule on its head.  Because Plaintiffs' FLSA claim is "virtually identical" to their state overtime claim, if they are forced to individually arbitrate their federal claim, their state law class action must necessarily be arbitrated as well, and Plaintiffs thereafter will be barred by principles of collateral estoppel from being part of the state class action or sharing in any class action recovery.  Thus, the end result is that Defendants will have forced Plaintiffs to arbitrate their class action claim; however, even Defendants admit that forcing Plaintiffs to arbitrate their class action claims plainly violates the FINRA rule.  (Mot. at 1)

Perhaps the lack of logic (and fairness) in this ultimate result explains why only four pages of Defendant's argument (Mot. at 8-12) even address the relevant question before this Court:  whether Plaintiffs' FLSA claim, which has been brought as a collective action is subject to arbitration under the FINRA rules.[2]  The answer to that question is no.  Therefore, the Motion should be denied.

---

[2]    The vast majority of Defendants' motion is spent arguing that the Plaintiffs' state law claims should be dismissed or stayed pending arbitration.  (Mot. at 12-18).  Another four pages of the Motion is spent making arguments Plaintiffs do not contest:  1) Plaintiffs signed Form U-4's which contain an arbitration provision that explicitly incorporates the FINRA rules; and 2) individual FLSA claims which are not brought as a collective action may be submitted to arbitration.  (Mot. 4-8)

## II.      ARGUMENT

**A.      PLAINTIFFS' CLASS AND COLLECTIVE ACTION CLAIMS ARE NOT SUBJECT TO ARBITRATION, THUS DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED.**

While defendants are correct that there is a "strong federal policy favoring arbitration" (Mot. at 4), this preference for arbitration must be tempered by the Supreme Court's admonition that "the FAA does not require parties to arbitrate when they have not agreed" to resolve their dispute in that fashion. *Volt Info. Sci. Inc. v. Board of Trustees,* 489 U.S. 468, 478 (1989). "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. International Bhd. of Teamsters*, No. 08-1214, 2010 U.S. LEXIS 5255, at *20 (June 24, 2010) (emphasis in original).

Here, the arbitration provision in the Form U-4 provides that Plaintiffs agreed to arbitrate any dispute "that is required to be arbitrated under the rules, constitutions, or by-laws of [FINRA/NASD[3]] as may be amended from time to time . . . ." (Mot. at 6; Decl. of David Nutkis, Ex. A [Dkt. No. 17-2] at 14, 34, 50; Ex. B [Dkt. No. 17-3] at 5, 18)  Defendants readily concede that Plaintiffs' Rule 23 overtime class action brought under state law is excluded from the parties' arbitration agreement pursuant to FINRA Rule 13204 (Mot. at 1), which expressly provides:

> (a) Class action claims may not be arbitrated under the Code.
>
> (b) Any claim that is based upon the same facts and law, and involves the same defendants as in a court-certified class action or a putative class action, or that is ordered by a court for class-wide arbitration at a forum not sponsored by a self-regulatory organization, shall not be arbitrated under the Code, unless the party bringing the claim files with FINRA one of the following:

---

[3]     Since the date of Plaintiffs' U-4 forms, the NASD has become FINRA. *See supra* at 8.

(1) a copy of a notice filed with the court in which the class action is pending that the party will not participate in the class action or in any recovery that may result from the class action, or has withdrawn from the class according to any conditions set by the court; or

(2) a notice that the party will not participate in the class action or in any recovery that may result from the class action.

(c) The Director will refer to a panel any dispute as to whether a claim is part of a class action, unless a party asks the court hearing the class action to resolve the dispute within 10 days of receiving notice that the Director has decided to refer the dispute to a panel.

(d) A member or associated person may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action until:

• The class certification is denied;

• The class is decertified;

• The member of the certified or putative class is excluded from the class by the court; or

• The member of the certified or putative class elects not to participate in the class or withdraws from the class according to conditions set by the court, if any.

This paragraph does not otherwise affect the enforceability of any rights under the Code or any other agreement.

FINRA Dispute Resolution Rule 13204 ("Rule 13204")[4] (Kadushin Dec., Ex. H).  Therefore, it is undisputed that the parties clearly had no intention to arbitrate Plaintiffs' state law class action claims. [5]

---

[4]   Unless otherwise noted, the use of "Rule 13204" herein includes the NASD predecessor rule.

[5]   *See also, e.g. Lomas v. Travelers Prop. Cas. Corp.* (*In re Citigroup, Inc.*), 376 F.3d 23, 25 (1st Cir. 2004) ("[U]nder NASD rules, a claim submitted as a class action 'shall not be eligible for arbitration,' nor may a member of NASD seek to enforce an arbitration agreement against another member who initiated a class action."); *Nielsen v. Piper, Jaffray & Hopwood, Inc.*, 66 F.3d 145 (7th Cir. 1995) (finding class action claim outside scope of arbitration agreement because of NASD and NYSE rules barring arbitration of such claims but recognizing court adjudication of class actions), *cert. denied,* 516 U.S. 1116 (1996);

Nevertheless, Defendants contend that the parties simultaneously intended to arbitrate Plaintiffs' "virtually identical" FLSA claim which was brought as a collective action.  As set forth more fully below, the parties could not possibly have had the intention to submit Plaintiffs' FLSA collective action claim to arbitration.  First, FINRA has specifically stated on multiple occasions that Rule 13204 applies to FLSA collective actions, and FINRA's earliest interpretive letter from 1999 (Kadushin Ex. A) has been publicly available on its website.  *See* http://www.finra.org/Industry/Regulation/Guidance/InterpretiveLetters/P002521.    Second, because Plaintiffs' FLSA overtime claim is "virtually identical" to their state law overtime claim, forcing Plaintiffs to arbitrate the federal claim necessarily forces them to arbitrate their class action claim, and such a result is prohibited under Rule 13204.[6]

---

*Coheleach*, 440 F. Supp. 2d at 340 (predecessor to Rule 13204 "provides that a class action is not eligible for NASD arbitration"); *Scher v. Equitable Life Assurance Soc'y*, 866 F. Supp. 776 (S.D.N.Y. 1994) (noting the propriety of a federal forum where plaintiffs signed U-4 forms because class action suits are not subject to NASD arbitration);  *Good v. Ameriprise Fin., Inc.,* Civil No. 06-1027 (PJS/RLE), 2007 U.S. Dist. LEXIS 9298, at *7 (D. Minn. Feb. 8, 2007) (predecessor to Rule 13204 "bars defendants from enforcing the arbitration clauses against" putative class members); *Chapman v. Lehman Bros.,* 279 F. Supp. 2d 1286, 1288 (S.D. Fla. 2003) ("It is undisputed that class actions brought by employees against their employer cannot be arbitrated under NYSE, NASD and AMEX rules.").

[6]  Further undercutting any finding of intent to include collective actions in their arbitration agreements is the fact that in numerous similar actions brought by stockbrokers for unpaid overtime, the parties have clearly understood that the FINRA ban on class actions applied to collective actions, because those courts approved settlement classes of brokers pursuing claims under the FLSA and state labor law without the issue of arbitration ever being raised. *See, e.g., Paskernak v. Maxim Group LLC.,* 09 Civ. 5579 (SHS), slip op. (S.D.N.Y. Nov. 16, 2009) (finding "the class is similarly situated under [FLSA]") (Kadushin Dec., Ex. G); *Bernhard v. TD Bank, N.A.*, Civil No. 08-4392 (RBK/AMD, 2009 U.S. Dist. LEXIS 92308 (D.N.J. Oct. 5, 2009); *Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.,* Master File: 06-3202**,** 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009).

1.    **As Consistently Recognized by FINRA, Rule 13204 Applies To FLSA Collective Actions.**

Obviously, Plaintiffs' FLSA claim is not being brought as a class action under Federal Rule of Civil Procedure 23, but Rule 13204's "class action" preclusion is not limited to Rule 23 opt-out class actions.  To the contrary, FINRA (and its predecessor the NASD) specifically and consistently have taken the position that FLSA collective actions are also ineligible for arbitration under Rule 13204.

a.    **FINRA History**

The 1938 Maloney-Eicher Act amendment to the Securities Exchange Act of 1934 (Exchange Act) authorized securities markets to organize bodies of self-regulatory organizations ("SROs") to police the actions of their members.  *See* 15 U.S.C. § 78o-3(a).  Pursuant to the Exchange Act, 15 U.S.C. §§ 78a-78oo, the United States Securities and Exchange Commission ("SEC") is authorized to delegate certain regulatory functions to SROs, which are therefore considered "quasi-governmental" bodies.  *Standard Inv. Chartered, Inc. v. NASD*, 07 Civ. 2014 (JSR), 08 Civ. 11193 (JSR), 2010 U.S. Dist. LEXIS 19174, at *2 (S.D.N.Y. Mar. 1, 2010).

Over years, the National Association of Security Dealers, Inc. ("NASD") emerged as the most prominent of the SROs, but there were others, including: the American Stock Exchange, Inc.; the Chicago Board Options Exchange, Inc ("CBOE"); and the New York Stock Exchange, Inc. ("NYSE").  Prior to 1976, the various SROs had differing rules for the administration of securities arbitration disputes.  In June of 1976, the SEC encouraged the SROs to develop and refine a common set of rules for predispute arbitration agreements that would promote efficiency of dispute resolution and minimize the costs of litigation between broker-dealers and retail

customers.  The Uniform Code of Arbitration was adopted by the participating SROs during 1979 and 1980.[7]

Then, in 2006, NASD and the NYSE announced a plan to consolidate their member regulation operations into a combined organization that would be the sole U.S. private-sector provider of member firm regulation for securities firms that conduct business with the public.[8] Thus, in 2007, the NASD and the regulatory arm of the NYSE combined to form the Financial Industry Regulatory Authority, Inc. ("FINRA"),[9] the sole private regulator of member firms. *Standard*, 2010 U.S. Dist. LEXIS 19174 at *2-3.  The NASD arbitration code subsequently became the FINRA code. *See* Release No. 34-56146, 2007 SEC LEXIS 1641 at *2-3.

### b.   FINRA Has Consistently Interpreted Rule 13204 As Precluding Collective Actions From Arbitration.

On June 17, 1992, the NASD submitted a proposed rule change to the SEC pursuant to section 19(b)(1) of the Exchange Act.  The proposal amended the NASD Code of Arbitration Procedure to exclude class action matters from arbitration proceedings.  This 1992 rule change developed from a suggestion made by the Chairman of the SEC, which asked SROs to adopt procedures that would give investors access to the courts when they were part of a class action.[10]

---

[7]   *SICA: The First Twenty Years,* Constantine N. Katsoris, 23 Fordham Urb. LJ. 483, 488 (1996).

[8]   Notice of Filing and Order Granting Accelerated Approval of Proposed Rule Change Relating to the Restated Certificate of Incorporation of National Association of Securities Dealers, Inc., Release No. 34-56146, 2007 SEC LEXIS 1641, at *2-3 (July 6, 2007).

[9]   References herein to FINRA, unless otherwise noted, also refers to its predecessor, the NASD.

[10]   Order Approving Proposed Rule Change Relating to the Exclusion of Class Actions From Arbitration Proceedings, Exchange Act Release No. 34-31371; File No. SR-NASD-92-28 (Oct. 28, 1992), 57 FR 52659 (Nov. 4, 1992) (Kadushin Dec., Ex. I).  *See also SICA,* 23 Fordham Urb. LJ. at 492; Kadushin Dec., Ex. E.

Thus, NASD Rule 10301(d) was enacted.[11]  In 2007, Rule 10301(d) was renumbered as FINRA Rule 13204.[12]

The reasons behind enacting the ban on class actions had nothing to do with whether a member had to opt-out or opt-in to the class.  Instead, the SEC and NASD recognized the benefits to litigants of being able to pursue their claims as a group and wanted to stop the practice previously engaged in by companies of enforcing individual arbitration agreements in order to bar investors and employees from access to the class action device and thus creating what the SEC described as "wasteful, duplicative litigation."  Exchange Act Rel. No. 34-31371, 57 FR 52659 ("In the past, individuals who attempted to certify class actions in litigation were subject to the enforcement of their separate arbitration contracts by their broker-dealers.  Without access of class actions in [appropriate] cases, both investors and broker-dealers have been put to the expense of wasteful, duplicative litigation. The new rule ends this practice.") (Kadushin Dec., Ex. I).  *See also Wilson v. Deutsche Bank AG***,** No. 05 C 3474, 2006 U.S. Dist. LEXIS 94847, at *9-10 (N.D. Ill. Mar. 20, 2006) ("The obvious purpose of the Rule, and the corresponding provision in the agreement, is to encourage resolution of disputes by class actions in courts, and to limit duplicative litigation either in the courts or in arbitration."); *French v. First Union Sec.*, 209 F. Supp. 2d 818, 826 (M.D. Tenn. 2002) (The SEC "promulgated the [FINRA] rules against

---

[11]   *See* Kadushin Dec., Ex. A at 2 (former NASD Rule 10301(d))

[12]   Around the time FINRA was created in 2007, there were some changes made to the arbitration code, including the renumbering of previous rule 10301(d) to Rule 13204, but changes to the class action ineligibility rule were not substantive and consisted mostly of renumbering and making the language simpler.  (*See* Kadushin Dec., Ex. F)  In particular, FINRA split the code into two sections -- one for customer disputes and one for industry disputes.  Rule 13204 is the successor of Rule 10301(d) and is applied to industry disputes.  *See* Exchange Act Rel. No. 34-55158 (Jan. 24, 2007), 72 FR 4574 (Jan. 31, 2007) (The discussion regarding the nonsubstantive changes to rule 12204 (which is Rule 13204's twin rule from the consumer rules) in 72 FR at *4580-81 also applies to the changes to Rule 13204.  *See* 72 FR at *4600.

arbitration of class action claims in 1992, finding that since the judicial system had procedures in place to manage class action claims, those claims were better handled by the courts.").

The SEC and NASD also concluded that courts were in a better position to oversee class actions because of the developed procedures already in place, which did not exist in the arbitral forum. Exchange Act Rel. No. No. 34-31371, 57 FR 52659 ("In all cases, class actions are better handled by the courts and that investors should have access to the courts to resolve class actions efficiently.") (Kadushin Dec., Ex. I).

Since the enactment of the rule making class actions ineligible for arbitration, FINRA has consistently interpreted the rule to cover FLSA collective actions.

In 1999, then NASD Assistant General Counsel, Jean I. Feeney, responded to an inquiry made on behalf of the National Employment Lawyers Association asking whether FLSA collective actions could be arbitrated under the NASD code. After considering the history of the rule excluding class action arbitration and the language of the code itself, Ms. Feeney opined that the language of Rule 10301(d) "is broad enough to encompass any type of class action filed in arbitration," including FLSA collective actions. (Kadushin Dec., Ex. A at 2)

In 2004, the issue of the arbitrability of collective actions was raised in *Nieto v. Goldman Sachs & Co.*, Case No. 04-21824, slip op. (S.D. Fla. Jan. 3, 2005). There, the directors of arbitration for the NASD, NYSE and CBOE each submitted a declaration stating that each of their respective rules barring the arbitration of class claims applied to the FLSA collective action at issue in that case. (Kadushin Dec., Exs. B, C, D)

In 2006, Jean I. Feeney, then Vice President and Chief Counsel of Dispute Resolution at the NASD, at the request of the plaintiff's counsel in the *Coheleach* case, submitted a letter again tracing the history of the class action ineligibility rule and reiterating NASD's earlier position

that the rule applies to collective actions.[13]  *Coheleach*, 440 F. Supp. 2d 338.  (Kadushin Dec., Ex. E)

Now, once again, FINRA is repeating this same position directly connection with to this case.  Kenneth L. Andrichik, Senior Vice President - Chief Counsel and Director of Mediation and Strategy, FINRA Dispute Resolution, has written a letter stating:

> In 2007, FINRA revised the NASD Code of Arbitration Procedure to re-number and reorganize the rules, and to use plain English guidelines in drafting rule language.  The Code Revision also made some substantive changes to a number of rules.  However, FINRA made no substantive changes to Rule 10301(d).  It was re-numbered, reordered and adopted as FINRA Rule 13204.  Accordingly, our interpretation of FINRA Rule 13204, and how it relates to the FLSA, remains consistent with interpretations in the 1999 Letter and in the 2004 Affidavit [that was submitted in connection with the *Nieto* case].

(Kadushin Dec., Ex. F (citing Exchange Act Rel. No. 34-55158))  FINRA thus acknowledged that it continues to assert that the "prohibition against arbitration of class actions . . . applies to . . . Fair Labor Standards Act ("FLSA") collective action[s] . . . ."  *Id.*

### c.  FINRA's Consistent Interpretation Of Rule 13204 Is Eminently Reasonable Given The Purpose Of the Rule.

FINRA's interpretation of Rule 13204 as applying to collective actions makes perfect sense given the purpose of the rule.  Just like a Rule 23 class action, a section 216(b) collective action is a representative action[14] that benefits from specific rules for judicial oversight -- the

---

[13]  Judge Cedarbaum, however, never reached this issue, because she found that the plaintiff had only an individual FLSA claim.  *See Coheleach v. Bear, Stearns & Co.*, 440 F. Supp. 2d 338, 340 (S.D.N.Y. 2006).  When no one had opted into the case during the first six months after filing, the court set a two-month deadline for the joinder of additional plaintiffs.  *Id.*  After that date passed and still no securities brokers had opted-in, the court found that "plaintiff's FLSA claim is an individual one, and therefore subject to NASD arbitration . . . ."  *Id.*

[14]  *See Woods v. New York Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982) ("[S]ection 16(b) creates a genuine representative action . . ."); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 263 (S.D.N.Y. 1997) ("FLSA collective actions are still representative actions"); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 237 (N.D.N.Y 2002) ("Section 216(b) of

chief difference being that parties first have to give their consent (*i.e.* opt-in to the action) to be bound by a judgment rather than being presumptively bound unless they opt out. Thus, FLSA collective actions are similar to Rule 23 class actions in all the ways that are relevant to FINRA's considerations in enacting Rule 13204.

First, collective actions are favored under the law because they benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact," and provide employees with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Braunstein v. E. Photographic Labs.,* 600 F.2d 335, 336 (2d Cir. 1975), *cert. denied,* 441 U.S. 944 (1979); *Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484, 489 (S.D.N.Y. 2009). The alternative, a multitude of virtually identical individual suits, would burden courts unnecessarily and risk inconsistent judgments on claims arising from the same events and brought under the same laws. *See Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 371 (S.D.N.Y. 2007) ("Collective adjudication will avoid the proliferation of individual lawsuits that could result in disparate rulings and wasting of judicial and party resources.").[15]

Second, courts are equipped to handle the particularities of collective actions in ways arbitrators are not. *See* Exchange Act Rel. No. No. 34-31371, 57 FR 52659 ("In all cases, class

---

FLSA authorizes a representative action by employees . . ."); *North v. Board of Trustees of Ill. State Univ.*, 676 F. Supp. 2d 690, 696 n.9 (C.D. Ill. 2009) (explaining that a "§ 216(b) action is a "genuine" representative action").

[15] *Lusardi v. Lechner*, 855 F.2d 1062, 1071 (3d Cir. 1988) ("[T]he class action in which only members who agree to participate are bound remains an important tool . . . . Used properly, it reduces multiplicity of suits and offers a convenient means of settling issues common to a large number of persons whose interest is sufficiently similar. To accomplish the Congressional purpose of encouraging private enforcement of these statutes by making it convenient and inexpensive for the persons they are meant to protect, the members of the class who opt-in receive the benefit of final judgment despite the action's non-binding effect on absent members.").

actions are better handled by the courts and that investors should have access to the courts to resolve class actions efficiently.") (Kadushin Dec., Ex. I).  For example, one of the most important aspects of collective actions under section 216(b) is the provision for expedited notice. Unlike absent class members in a Rule 23 class action, potential class-member employees in a FLSA collective action must affirmatively consent (or "opt in") to be covered by the suit.  The statute of limitations continues to run on each individual's claim until he files his written consent form with the Court.  29 U.S.C.A. §§ 255, 256(b).  To insure that the rights protected by the FLSA do not grow stale through lack of knowledge, the Supreme Court has ruled that courts have broad authority to facilitate early notice of the existence of the lawsuit to potential opt-in plaintiffs.  *Hoffmann-La Roche*, 493 U.S. at 170.  Notice to putative class members should be given as soon as possible, since, because of the statute of limitations, "potential plaintiffs may be eliminated as each day goes by."  *Foster v. Food Emporium,* 99 Civ. 3860 (CM), 2000 U.S. Dist. LEXIS 6053, *5 (S.D.N.Y. Apr. 26, 2000).[16]

The fact that Rule 13204 uses the term "class action," does not indicate that it meant to solely include opt-out Rule 23 class actions.  In fact, an earlier version of Rule 23 included a

---

[16]   *See also Dumitrescu v. Mr. Chow Enters.*, 07 Civ. 3601 (PKL), 2008 U.S. Dist. LEXIS 49881, at *8 (S.D.N.Y. June 30, 2008) ("Indeed, the benefits of a collective action 'depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'") (citation omitted); *Lynch,* 491 F. Supp. 2d at 367 ("[C]ourt-supervised notice is the preferred method for managing the notification process for several reasons: it avoids "multiplicity of duplicative suits;" it allows the court to set deadlines to advance the disposition of an action; it furthers the "wisdom and necessity for early judicial intervention" in multi-party actions; and it protects plaintiffs' claims from expiring under the statute of limitations."); *Cook v. United States,* 109 F.R.D. 81, 83 (E.D.N.Y.1985) ("Certainly, it is 'unlikely that Congress, having created a procedure for representative action, would have wanted to prevent the class representative from notifying other members of the class that they had a champion.'") (citation omitted).

provision for an opt-in class called a "spurious class"; the rule was created in 1938, around the same time Congress enacted section 216(b).

> Two efforts were made in 1938 to deal with the due process problem in applying *res judicata* to class actions. Those efforts formalized the opt-in class. First, Congress enacted § 16(b) for the special purpose of facilitating enforcement of the FLSA. Second, and more generally, the Advisory Committee on the Federal Rules provided for notice to absent class members and included in old Rule 23, 23(a)(3)'s "spurious class." Under both the statute and the rule, class actions in which absent members were not bound by the judgment were recognized.

*Lusardi*, 855 F.2d at 1070.   Moreover, courts often use the term "class action" to refer to collective actions without confusing the unique requirements of each device.[17]

### d. FINRA's Interpretation Of Its Own Rule Should Be Given Deference.

#### 1) Under *Auer v. Robbins*, Controlling Deference Should Be Given To FINRA's Interpretation Of Their Own Rules.

In their interpretative letters and declaration, FINRA, a "quasi-governmental" agency, interpreted Rule 13204 -- FINRA's own procedural rule.   Accordingly, the FINRA's interpretation letters and declaration are entitled to controlling deference under *Auer v. Robbins*,

---

[17] *See, e.g., Hoffman-La Roche*, 493 U.S. at 171 (referring to ADEA "collective form of action" as a "class device"); *Carter v. Countrywide Credit Indus.*, 362 F.3d 294, 298 (5th Cir. 2004) ("[T]he provision for class actions in the ADEA is the FLSA class action provision . . . .") (cited in Mot. at 7); *Lusardi,* 855 F.2d at 1071; *Zivali v. AT&T Mobility LLC*, 646 F. Supp. 2d 658, 660 (S.D.N.Y. 2009) (referring to "class certification" for FLSA collective action); *Barfield v. New York City Health & Hosps. Corp.*, 05 Civ. 6319 (JSR), 2006 U.S. Dist. LEXIS 56711, at *6 (S.D.N.Y. Aug. 11, 2006) (describing FLSA collective action as "akin to a class action"), *aff'd,* 537 F.3d 132 (2d Cir. 2008); *Realite v. ARK Rests. Corp.*, 7 F. Supp. 303 (S.D.N.Y. 1998); *Roebuck*, 239 F. Supp. 2d at 237 n.7 ("A representative action (also called a "collective action" or a "class action") under section 216(b) of FLSA . . . ."). *See also Jacobsen v. The Stop & Shop Supermarket*, 02 CIV. 5915 (DLC), 2003 U.S. Dist. LEXIS 7988, at *8-9 (S.D.N.Y. May 14, 2003) ("In seeking authorization for a [FLSA] class action, a plaintiff must make a "modest factual showing" that he and the other putative class members "were victims of a common policy or plan that violated the law."). *See also Pirrone v. North Hotel Assocs.*, 108 F.R.D. 78, 79 (E.D. Pa. 1985) ["The FLSA has its own class action provision, and that provision rather than Federal Rule of Civil Procedure 23 controls class actions brought under the FLSA."].

519 U.S. 452 (1997).   Under *Auer*, "[a]n agency's interpretation of its own regulations is 'controlling' unless 'plainly erroneous or inconsistent with' the regulations being interpreted.'" *Long Island Care at Home,* 551 U.S. at 171 (quoting *Auer*, 519 U.S. at 461 (internal quotations omitted)).[18]   "When an opinion letter interprets the agency's own regulation, . . . it is entitled to deference under the Supreme Court's opinion in *Auer* . . ., so long as the regulation in question is ambiguous."   *Torres v. Ridgewood Bushwick Senior Citizens Homecare Council, Inc.*, 08-CV-3678 (CBA), 2009 U.S. Dist. LEXIS 33622, at *11 (E.D.N.Y. Apr. 22, 2009)[19]

As Rule 13204 does not define "class actions" or specify which types of lawsuits are considered to be covered by the term, the rule is clearly ambiguous.  *Cordiano v. Metacon Gun*

---

[18]   *See, e.g., Couer Alaska Inc. v. Southeast Alaska Conservation Council*, 129 S. Ct. 2458, 2469-2470 (2009) (according *Auer* deference to EPA internal memorandum); *In re Novartis Wage & Hour Litig.*, No. 09-0437-cv, 2010 U.S. App. LEXIS 13708, at *30 (2d Cir. July 6, 2010) ("The Secretary's interpretations of her regulations are thus entitled to "controlling" deference unless those interpretations are "'plainly erroneous or inconsistent with the regulation.'").

[19]   Defendants' argument that interpretive letters are not due *Chevron* deference (Mot. at 11) misses the point.  "As [the Second Circuit has] stated in the past, *Chevron* deference is the deference afforded to an agency's interpretation of a statute it is charged with administering . . . . .  *Auer* deference is the deference we afford to an agency's interpretation of its own regulations."   *Linares Huarcaya v. Mukasey,* 550 F.3d 224, 229 (2d Cir. 2008) (internal quotation marks omitted).   Similarly, Defendants' citation to *Christensen v. Harris County,* 529 U.S. 576 (2000) (Mot. at 11) is inapposite.  In *Christensen*, the Supreme Court held that "[i]nterpretations such as those in opinion letters--like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law-- do not warrant *Chevron-style* deference" when they **interpret a statute**.   529 U.S. at 587. Moreover, the *Christensen* Court found that the Department of Labor's interpretation was directly at odds with the language of the statute.  *Id.*

Even further afield is Defendants' citation to *Amalgamated Clothing & Textile Workers Union v. SEC*, 15 F.3d 254 (2d Cir. 1994).  (Mot. at 11)  There, the Second Circuit did not even address how much deference should be given to an SEC no-action letter.  Rather, the court found that it lacked jurisdiction to review the SEC's no-action letter because it was not a final order.  Notably, the Court, while pointing out that such letters are not "binding," stated that courts may find "positions articulated in no-action letters persuasive in the circumstances."  *Id.* at 257.

*Club, Inc.*, 575 F.3d 199, 207 (2d Cir. 2009) (finding that where it was unclear what a term entailed, the regulation was ambiguous and *Auer* deference should apply to the agency's interpretation of the regulation); *Linares Huarcaya,* 550 F.3d at 229 (finding the language in a regulation ambiguous as it could have "several different meanings" and applying *Auer* deference); *See also Black's Law Dictionary*, p. 79 (7th Edition, 1999) (defining "ambiguous" as "An uncertainty of meaning or intention, as in a contractual term or statutory provision.").

As described in Section II(A)(1)(c) above (*supra* at 11-14), FINRA's interpretation of Rule 13204 -- a rule that it wrote -- is eminently reasonable and is neither plainly erroneous nor inconsistent with the rule.  *See Linares Huarcaya,* 550 F.3d at 229 ("It is axiomatic that the [agency's] interpretation need not be the best or most natural one by grammatical or other standards . . . . Rather, the [agency's] view need be only reasonable to warrant deference.") (internal quotation omitted))  Accordingly, FINRA's interpretation that Rule 13204's prohibition against the arbitration of class actions applies to FLSA collective actions is controlling. *See, e.g. Fogel v. Chestnutt,* 533 F.2d 731, 753 (2d Cir. 1975) ("an exchange has a substantial degree of power to interpret its own rules"), *cert. denied,* 429 U.S. 824 (1976); *Castellano v. Prudential-Bache Sec., Inc.,* No. 90 Civ. 1287, 1990 U.S. Dist. LEXIS 7352, at *4 (S.D.N.Y. June 19, 1990) ("[A] Court should permit national securities exchanges to construe and apply their own rules."); *National Planning Corp. v. Achatz,* 02-CV-0196E(Sr), 2002 U.S. Dist. LEXIS 25516, at *11 (W.D.N.Y. Dec. 17, 2002) ("[C]ourts should be wary about disregarding NASD Rules and should accord deference to the NASD's interpretation of its Rules.").  *See also F.N. Wolf & Co. v. Bowles*, 610 N.Y.S.2d 757, 760 (N.Y. Sup. Ct. 1994) (deferring to the NASD's interpretation of its own regulations and ruling that "[t]he principle that an interpretation by an administrative agency of its own regulations is entitled to the greatest weight and that a court should defer to

such interpretation provided that it is not irrational or unreasonable has been applied to self-regulatory agencies . . . as well as to government agencies.").

>### 2) Even If *Auer* Is Found To Be Inapplicable, FINRA's Interpretation Should Still Be Found To Be Persuasive.

However, even if the Court were to find that *Auer* deference does not apply, "an agency interpretation is still entitled to respect according to its persuasiveness under *Skidmore v. Swift & Co*., 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1944)." *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 78 (2d Cir. 2009) (internal quotation omitted) , *cert. denied,* 130 S. Ct. 2342 (2010). Persuasiveness turns upon the following factors: "'the thoroughness evident in the agency's consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" *Wong v. Doar*, 571 F.3d 247, 260 (2d Cir. 2009) (quoting *Skidmore*, 323 U.S. 134).

>*Skidmore* deference is not an "unabashed tautology"--despite the language of the test, it does not mean that the Court defers only when persuaded that the agency is correct, for that "would not be deference at all." Rather, *Skidmore* requires recognition of the agency's expertise in interpreting the statutes it administers, and it instructs deference where the agency applies that expertise to a problem of statutory interpretation through reasoning that is thorough, consistent with its other pronouncements, and legally valid.

*Lopez v. Terrell*, 09 Civ. 8148 (RJH), 2010 U.S. Dist. LEXIS 28900, at *25-26 (S.D.N.Y. Mar. 26, 2010).

FINRA's interpretive letters are thoroughly and validly reasoned and are entirely consistent with the language and purpose of Rule 13204 and, thus, should be given *Skidmore* deference. *See NRDC v. FAA*, 564 F.3d 549, 564 (2d Cir. 2009) ("Under *Skidmore*, the weight courts accord an agency interpretation depends on 'the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'").

17

### e.   Defendants Have Failed To Present Any Reason For Not Regarding FINRA's Interpretation of Rule 13204 With The Deference It Deserves.

#### 1)   Defendants' Attacks On FINRA's 1999 Opinion Letter Are Unavailing.

Despite the fact that it is not FINRA's only interpretive statement, Defendants' attack on FINRA's interpretation focuses solely on the 1999 opinion letter.  (Mot. at 10-11)  As set forth above, FINRA set forth its position regarding Rule 13204 and its application to collective actions on multiple occasions, including in 1999, 2004 and 2006, and has written an opinion letter specifically for this case.  (Kadushin Dec., Exs. A, B, E, F)  Thus, Defendants' objections that the 1999 opinion letter is inapplicable here because it was "based on the facts provided by the person seeking the letter," " interpreted a predecessor provision" and uses the phrase "FLSA class actions rather than collective actions" (Mot. at 11) are all cured by the 2010 FINRA letter.  (Kadushin Dec., Ex. F)

#### 2)   FINRA's Inclusion Of A Joinder Rule Does Not Preclude Collective Actions From Rule 13204.

Defendants contend that FINRA Rule 13312 "show[s] that FLSA collective actions are outside of the scope of FINRA's class action exclusion (FINRA Rule 13204) and within the permissive joinder rule."  (Mot. at 10)  The mere fact that the FINRA includes a provision for joinder does not indicate that collective actions were not meant to be covered by Rule 13204 – particularly since FINRA has said specifically that they are.[20]  Defendants have not cited to a single FINRA

---

[20]   In fact, one panel of arbitrators rejected this very argument in connection with the ban on class actions.  In *Clark v. First Union Sec.*, the company argued that NASD joinder rule 10314(d) required the plaintiff "to identify the individuals seeking restitution and then partake in arbitration through joinder procedures."  64 Cal. Rptr. 3d 313, 320-21 (Cal. Ct. App. 2007).  The arbitrators rejected that argument, and the plaintiff's two class claims were found ineligible for arbitration under NASD Rule 10301 and ultimately returned to the state court.  *Id.*

decision recognizing the application of rule 13312 to a group of FLSA claimants, nor has Plaintiffs' research unearthed any such case.

Just as the inclusion of the permissive joinder rule in the Federal Rules of Civil Procedure does not preclude a 216(b) collective action, the existence of FINRA rule 13312 is not mutually exclusive of collective actions being ineligible for arbitration. In fact, courts have rejected the argument that collective actions are synonymous with permissive joinder actions. *See North*, 676 F. Supp. 2d at 696 n.9 (A "§ 216(b) action is a "genuine" representative action, and . . . does not merely create a right of permissive joinder.") (citation omitted).[21]

### 3)   Defendants' Cases Are Unpersuasive.

Defendants cavalierly state that "[n]umerous courts throughout the country have . . . granted motions to compel arbitration of FLSA claims, whether brought individually or as a collective action" and "[c]ourts consistently compel arbitration of FLSA collective action claims, such as alleged by plaintiffs in the Amended Complaint." (Mot. at 7-8, 9)  However, apart from four Southern District of Florida cases, not one of Defendants' citations involves the eligibility of a FLSA collective action for FINRA arbitration.  Instead, Defendants' citations involve

---

[21]   *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) ("[T]he standard for allowing an opt-in joinder class under § 216(b) differs from, and is more lenient than, the standards for joinder . . . ."). *See also Lusardi*, 855 F.2d at 1078-79 (distinguishing collective actions from permissive joinder); *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 627 n.5 (E.D. Cal. 2009) (same).

19

individual FLSA actions,[22] non-FINRA arbitration agreements affecting collective actions,[23] or individual actions that did not fall within FINRA.[24]

With respect to the four Florida cases that do specifically address the issue, none of those decisions articulate any judicious reason for not deferring to FINRA's reasonable and consistent interpretation of its own rule. *See Long Island Care*, 551 U.S. at 171 (Under *Auer*, "[a]n agency's interpretation of its own regulations is 'controlling' unless 'plainly erroneous or inconsistent with' the regulations being interpreted.'"). *See also Encarnacion,* 568 F.3d at 78; *supra* at 14-17.

Defendants cite *Nieto,* an unpublished slip opinion, in support of their argument for the rejection of the 1999 NASD Letter written by Jean I. Feeney.  (Mot. at 12)  In *Nieto*, the plaintiffs submitted the 1999 Letter as well as affidavits from the arbitration directors of the

---

[22]  *Kuehner v. Dickinson & Co.*, 84 F.3d 316 (9th Cir. 1996); *McFadden v. Clarkeson Research Group,* 2010 U.S. Dist. LEXIS 50526 (E.D.N.Y. May 18, 2010).

[23]  *Carter*, 362 F.3d 294; *Bailey v. Ameriquest Mortg. Co.*, 346 F.3d 821 (8th Cir. 2003); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002); *Wilks v. Pep Boys*, 241 F. Supp. 2d 860 (M.D. Tenn. 2003).

[24]  *Montes v. Shearson Lehman Bros.*, 128 F.3d 1456 (11th Cir. 1997); *Bolamos v. Globe Airport Sec. Servs.*, Case Number: 02-21005-CIV-MORENO, *2002 U.S. Dist. LEXIS 11056* (S.D. Fla. May 20, 2002), *aff'd*, 64 Fed. Appx. 743 (11th Cir. 2003); *Giordano v. Pep Boys-- Manny, Moe & Jack, Inc.*, Civ. No. 99-1281, 2001 U.S. Dist. LEXIS 5433 (E.D. Pa. Mar. 29, 2001).

Similarly, Defendants' contention that "the Supreme Court acknowledged in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991) [that] collective actions may be submitted to arbitration" (Mot. at 9) grossly misstates that case.  First, *Gilmer,* which was filed in 1988 and decided by the Supreme Court in 1991, predates the NASD rule making class action claims ineligible for arbitration, which was not approved until 1992.  Second, Gilmer brought his ADEA claim as an individual action, but he argued -- among many other arguments -- that ADEA claims in general should not be covered by arbitration agreements because arbitration procedures could not "adequately further the purposes of the ADEA" since they did not provide for class actions.  500 U.S. at 32.  The Supreme Court responded that the simple fact that ADEA "provides for the possibility of bringing a collective action," does not preclude all individual attempts at resolution.  *Id.* (citation omitted).

NASD, NYSE and CBOE, all stating that the class action preclusion rule applied to FLSA collective actions.  (Kadushin Dec., Exs. B, C, D)  The *Nieto* court nevertheless concluded that the statements were "recent" and "ad hoc" and did "not reveal that the SROs have 'consistently maintained a longstanding policy on the subject," and thus did "not deserve any deference with respect to the issue of whether the plaintiffs' FLSA claims are barred from arbitration."  *Nieto,* slip op. at 5-6 (citation omitted) (Mot., Decl. of Robert S. Goodman, Ex. E [Dkt. No. 18-4]).

 *Nieto* is unpersuasive here not only because the court failed to apply either the *Auer* or *Skidmore* standard of deference to the agency submissions before it, but because FINRA has issued at least two more interpretive letters since the *Nieto* case repeating its position with respect to Rule 13204, thus wholly undermining the court's conclusion that FINRA has no "longstanding policy on this subject."  *Nieto,* slip op. at 5-6 (Mot., Decl. of Robert S. Goodman, Ex. E [Dkt. No. 18-4]).  *See Cordiano*, 575 F.3d at 208 (finding that the fact that EPA had consistently interpreted its regulation in the same way over sixteen years was clear evidence that the interpretation was not a *post hoc* rationalization and reflected the agency's considered judgment on the matter);

 None of the three other Florida cases addressed FINRA's interpretation of Rule 13204. Rather, *Kozma* and *Szillassey* all relied on *Chapman*'s conclusion that opt-out classes are different from opt-in classes and that because the rule refers to "class certification, decertification and exclusion, and opting out," which are "are not functions of a § 16(b) collective action, but rather speak directly to a Fed. R. Civ. P. 23 class action," the rule can only apply to Rule 23 class actions.  *See Kozma v. Hunter Scott Fin., LLC*, Case No. 09-80502, 2010 U.S. Dist. Lexis 16746, at *8 (S.D. Fla. Feb. 25, 2010);[25] *Szilassy v. Ameriprise Fin. Servs.*, Case NO. 07-80559-Civ.,

---

[25] *Kozma,* also made the specious observation that including collective actions in Rule 13204 "would allow Plaintiff to avoid the clear and unambiguous terms of the contracts he signed

2007 U.S. Dist. LEXIS 97110, at *5-6 (S.D. Fla. Aug. 1, 2007); *Chapman*, 279 F. Supp. 2d at 1289-90.  *See also Nieto,* slip op. at 4-5 (Mot., Decl. of Robert S. Goodman, Ex. E [Dkt. No. 18-4]) (relying upon Chapman's differentiation between Rule 23 opt-out classes and FLSA collective actions).

However, as explained *supra* at 9-10, the enactment of Rule 13204 was not based on the opt-out nature of class actions, and, in fact, neither Rule 13204 nor its predecessor includes the term "opt-out" anywhere.  (Kadushin Dec., Exs. A at 2, H)  Moreover, the requirements that must be met before a claim that is part of a class action can be arbitrated are equally applicable to collective actions.  If – as FINRA intends – Rule 13204 includes collective actions, then a party could similarly compel arbitration under subsection (d) once a court (1) declined to certify the collective action (finding the members were not "similarly situated"), (2) decertified the collective action (finding after the conclusion of discovery that the member are not similarly situated), (3) found that a particular person was not similarly situated, or if (4) a party who initially opted into an action "withdraws from the class."  Thus, none of Rule 13204's terms are exclusive to Rule 23 class actions.

Because Defendants cannot overcome the deference owed FINRA's interpretation of Rule 13204 under either *Auer* or *Skidmore,* the Motion should be denied.

> **2.     Plaintiffs' FLSA Overtime Claims Are Not Eligible For Arbitration Because They Are "The Subject Of" Plaintiffs' State Law Class Action.**

Even were the Court to ignore FINRA's interpretation and find that an FLSA collective action does not qualify as a "class action" under Rule 13204(a), the Court should find that Plaintiffs' FLSA claim is ineligible for arbitration under Rule 13204(d), because the federal claim

---

simply by styling his FLSA complaint as a *collective* action." 2010 U.S. Dist. Lexis at *8. However, this exact same critique applies to Rule 23 opt-out class actions. *Kozma*'s actual objection seems to be to Rule 13204 itself and the fact that it applies to putative classes.

is "virtually identical" to Plaintiffs' state overtime claim which is brought as a Rule 23 class. Under Rule 13204(d), "[a] member or associated person may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that *is the subject of* the certified or putative class action."   Rule 13204(d) (emphasis added) (Kadushin Dec., Ex. H).  As the FLSA claim is effectively the subject of a putative Rule 23 class action, Defendants cannot compel Plaintiffs to arbitrate their FLSA claims.  *See Olde Discount Corp. v. Hubbard*, 4 F.Supp.2d 1268, 1271 (D. Kan. 1998) (finding "individual claim encompassed by a putative class action filed in federal court is ineligible for arbitration"), *aff'd*, 172 F.3d 879 (10th Cir. 1999) (table disposition).

As Defendants acknowledge, Plaintiffs' FLSA claim is "virtually identical" to their state law claim for overtime.  (Mot. at 1)  Both Plaintiffs' FLSA and state overtime claims allege that 1) Brill stockbrokers regularly worked more than forty hours per week, 2) they are not exempt from federal and state overtime requirements, and (3) Defendants never paid them time and a half for their overtime hours.  Plaintiffs' federal and state overtime claims are lodged against the same Defendants and share the same factual basis -- the Complaint even uses the same underlying factual recitals for both.  (*See, e.g.* Am. Compl. ¶¶ 26-27, 32-34.)  Moreover, the claims share a legal basis because New York courts look to the FLSA to evaluate state law claims for overtime.[26]  And because the statute of limitations for state wage-hour claims is six years while the FLSA has a two year limitations period (three years for willful violations), every putative class/collective member with an FLSA overtime claim necessarily has an overtime claim under

---

[26]   *See, e.g., Scholtisek v. Eldre Corp.*, 03-CV-6656L, 2010 U.S. Dist. LEXIS 26664 (W.D.N.Y. Mar. 22, 2010) (New York overtime regulations, particularly the exemptions, should be "be applied and construed in a manner consistent with the analogous provisions under the FLSA") (citing 12 N.Y.C.R.R. § 142-2.2; *Reiseck v. Universal Communications of Miami, Inc.,* 591 F.3d 101, 105 (2d Cir. 2010)).

New York state law and, thus, is part of the state class action.  *See* 29 U.S.C. § 255(a); N.Y. Lab. Law § 663(3).[27]

This overlap of claims means that if Plaintiffs were compelled to individually arbitrate their FLSA overtime claims they necessarily would also be arbitrating their state class action claims.  Furthermore, Plaintiffs undoubtedly would be foreclosed by principles of collateral estoppel from subsequently pursuing their class action claim for overtime or participating in any class recovery on the state overtime claims.[28]  The fact that the class claim for overtime would be collaterally estopped by an arbitral decision on the FLSA overtime claim should demonstrate that the FLSA claim is the subject of the class action claim.  *See Cooper v. Miller Johnson Steichen Kinnard, Inc.*, Civil No. 02-1236 RHK/AJB, 2002 U.S. Dist. LEXIS 27764, at *6 (D. Minn. Nov. 6, 2002) (looking to principles of res judicata in determining whether an arbitral claim was encompassed within a class action) *not adopted on other grounds*, 2003 U.S. Dist. LEXIS 26401 (D. Minn. Jan. 3, 2003).

Compelling Plaintiffs to arbitrate their FLSA claim would have the same effect as forcing them to arbitrate their entire Complaint, without them first having to opt-out of the class action.

---

[27]   Because not one of the four cases from the Southern District of Florida relied upon by Defendants involved an overlap of FLSA and state law claims, none of those cases gave rise to this same problem.  In *Chapman, Szilassy* and *Nieto,* the plaintiffs only brought claims under the FLSA.  *Chapman,* 279 F. Supp. 2d 1286; *Nieto,* slip op. (Mot., Decl. of Robert S. Goodman, Ex. E [Dkt. No. 18-4]); *Szilassy,* 2007 U.S. Dist. LEXIS 97110.  In *Kozma,* the plaintiffs brought an FLSA claim for overtime and a state law claim for failure to pay minimum wage.  2010 U.S. Dist. Lexis 16746.

[28]   *See Mitra v. Global Fin. Corp.*, 09-CV-4387 (DLI) (RLM), 2010 U.S. Dist. LEXIS 37390 (E.D.N.Y. Apr. 15, 2010) ("The doctrines of res judicata and collateral estoppel apply to arbitration awards with the same force and effect as they apply to judgments of a court.").  *Cf. Streit v. Amdocs, Inc.*, No. 07-3760-cv, 307 Fed. Appx. 505**,** 509 (2d Cir. Jan. 20, 2009) ("'It is well settled that th[e] doctrine [of *res judicata*] serves to bar certain claims in federal court based on the binding effect of past determinations in arbitral proceedings.'") (citation omitted).

Even Defendants acknowledge that Rule 13204 precludes them from compelling Plaintiffs to arbitrate their class action claims (Mot. at 1), but that is exactly the result they are advocating.[29] Indeed, it would permit Defendants to engage in the very practice Rule 13204 and its predecessors were enacted to prohibit -- compelling class members to arbitrate individual claims as a way of derailing a class action.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs' respectfully request that Defendants' Motion be denied in its entirety.

Dated: New York, NY          Respectfully submitted,
      July 27, 2010

                              _/s/ Michael D. Palmer_____
                              Michael D. Palmer (MP-5090)
                              Matthew D. Kadushin (MK-1968)
                              Diane Hester (on the brief)
                              JOSEPH, HERZFELD, HESTER &
                              KIRSCHENBAUM LLP
                              757 Third Avenue, 25th Floor
                              New York, NY 10017
                              (212) 688-5640
                              (212) 688-2548 (fax)

                              *Attorneys for Plaintiffs, proposed collective*
                              *action members and proposed class*

---

[29] This outcome would be particularly problematic for individuals like Plaintiff Adam Gabiam, whose state law claim extends further back than their FLSA claim.  (Mr. Gabiam's FLSA claim only covers 2007 through 2008 while his New York overtime claim covers 2005 through 2008).  (Am. Compl. ¶ 12) Under no circumstance could such an individual be fully compensated by an FLSA arbitration, yet he would be bound by the finding in the FLSA arbitration under the principle of collateral estoppel.